## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JINGRU ZHAO,<br>No. 7B, Unit 3, Building 3 Qingboyuan<br>Shijicheng Liandianchang,<br>Haidian District Beijing;<br>Republic of China | ) )<br>)<br>)<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | Civil Action No. 18-1476 |
| v. | )<br>) | |
| U.S. DEPARTMENT OF HOMELAND<br>SECURITY,<br>245 Murray Lane, S.W. Building 410,<br>Washington, D.C. 20258; | )<br>)<br>)<br>)<br>) | |
| KIRSTJEN NIELSEN, Secretary,<br>U.S. Department of Homeland Security, in her<br>official capacity as well as her successors and<br>assigns,<br>245 Murray Lane, S.W. Building 410,<br>Washington, D.C. 20258-0075; | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| U.S. CITIZENSHIP AND IMMIGRATION<br>SERVICES,<br>111 Massachusetts Avenue, N.W.<br>Washington, D.C. 20529-2000; | )<br>)<br>)<br>)<br>) | |
| L. FRANCIS CISSNA, Director,<br>U.S. Citizenship and Immigration Services,<br>in his official capacity as well as his<br>successors and assigns,<br>20 Massachusetts Avenue, N.W.<br>Washington, D.C. 20529-2000; | )<br>)<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| RON ROSENBERG, Chief,<br>Administrative Appeals Office,<br>in his official capacity as well as his<br>successors and assigns,<br>20 Massachusetts Avenue, N.W., MS 2090,<br>Washington, D.C. 20529-2090; | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, by and through undersigned counsel, alleges as follows:

## I.  INTRODUCTION

1.      This is a civil action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, for judicial review of a final agency decision that plaintiff failed to establish eligibility for classification under Section 203(b)(5) of the Immigration and Nationality Act ("INA") through a preponderance of the evidence.

2.      INA § 203(b)(5), otherwise known as the EB-5 Immigrant Investor Program, provides classification to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise (including a limited partnership) where they invest a qualifying amount, either $1,000,000 or $500,000 in an underserved area, and create at least ten jobs for U.S. workers.  8 U.S.C. § 1153(b)(5).

3.      In April 2014, plaintiff and her sister, Jingkun Zhao, both filed Form I-526 Petitions to establish eligibility under INA § 203(b)(5) and each invested $500,000 into a real estate development project to build a residential senior living facility in Powder Springs, Georgia, which is a project of SWAL, LP, a Virginia limited liability partnership.  Based on a loan obtained by the sisters with their family home as collateral, the sisters transferred $500,000 in cash to the partnership's escrow account in March 2014.

4.      SWAL, LP was formed to participate in, and fund the acquisition, construction, ownership, organization, and management of, a 90 unit senior living facility comprising 55 assisted living units and 35 memory care units that will be managed by Sage Management, which currently manages several similar facilities throughout the southeast.

5.       Total capital for the Powder Springs Assisting Living LLC is expected to be

approximately $17.8 million, which will be financed by $6 million in EB-5 investor equity, a

$10 million loan, and sponsor equity.  An economic model predicts that Powder Springs

Assisted Living LLC would create approximately 141 full-time direct and indirect jobs.

6.      On July 20, 2017, U.S. Citizenship and Immigration Services (USCIS)

approved the Form I-526 Petition for Ms. Jingkun Zhao, plaintiff's sister.  Conversely, on

January 26, 2018, USCIS's Administrative Appeals Office issued a final action denying

plaintiff's identical Form I-526 petition.  USCIS did not explain why it denied plaintiff's EB-5

petition, but approved her sister's EB-5 petition with the same supporting evidence in their

respective administrative records.

7.      In the January 26, 2018 final action denying plaintiff's EB-5 petition, defendant

USCIS's Administrative Appeals Office determined that plaintiff had not made a qualifying

contribution of the minimum required amount of capital pursuant to the EB-5 program's

implementing regulations at 8 C.F.R. §§ 204.6(e) and 204.6(j)(2) because the "regulatory

definitions of "capital" and "invest" preclude an investment of unsecured indebtedness."  AAO

Denial at pg. 5.

8.      Defendant AAO further found that a call option reflected in the Confidential

Offering Memorandum and Limited Partnership Agreement demonstrated the existence of an

impermissible debt arrangement where plaintiff's $500,000 cash investment could not be said

to be "at risk" for the purposes of generating a return on the investment.  The call option

provided the general partner with an option to redeem the investor's (the limited partners)

Class A shares on the fifth anniversary of the limited partners' investment.

9.      In March 2017 and February 2018 in functionally identical cases, two courts in

this district have held that defendants acted in an arbitrary and capricious manner when it

denied several Form I-526 petitions where the general partner, and not the investors, possessed

a call option based on those courts' interpretations of the statute and implementing regulations on what constitutes a qualifying investment. *See Doe v. USCIS*, 239 F. Supp. 3d 297 (D.D.C. 2017) (Kollar-Kotelly, J.); *Chang v. USCIS*, 2018 U.S.C. Dist. LEXIS 19912, Case No. 16-1740 (D.D.C. Feb. 7, 2018) (Bates, J.).

10.     Similar to *Doe* and *Chang*, defendants' decision to deny plaintiff's petition is arbitrary and capricious, not supported by substantial evidence, and beyond the scope of defendants' statutory authority.  Defendants have misapplied the facts and the law as to plaintiff's eligibility for immigrant investor classification by, *inter alia*:

a.      erroneously finding that plaintiff had failed to establishing a qualifying contribution of the minimum required amount of capital based on its interpretation of 8 C.F.R. § 204.6(e) and § 204.6(j)(2);

b.      erroneously determining that applicable legal requirements require plaintiff to somehow "secure" an all-cash capital contribution into a new commercial enterprise;

c.      failing to conclude properly that her $500,000 all-cash capital contribution to the new commercial enterprise was, in fact, cash and not a promissory note or other form of indebtedness between plaintiff and the new commercial enterprise under 8 C.F.R. §§ 204.6(e), 204.6(j)(2);

d.      erroneously finding that a General Partner's call option demonstrates the existence of a impermissible debt arrangement between the new commercial enterprise and plaintiff;

e.      erroneously affording disparate treatment between plaintiff, and her sister, whose identical EB-5 petition was approved with the same lawful source of funds, call option, and administrative record; and

f.      erroneously concluding that plaintiff had failed to establish eligibility for the

benefit sought under INA § 203(b)(5), 8 C.F.R. § 204.6, and the four precedent decisions by a preponderance of the evidence.

## II.     JURISDICTION AND VENUE

11.     This civil action arises under the Constitution and the laws of the United States. The Court has subject-matter jurisdiction over this civil action pursuant to 5 U.S.C. § 702, 28 U.S.C. §§ 1331, 1361 and 2201-22.  Because defendants' decision on a petition for an EB-5 visa is not discretionary, neither the immigration laws nor the APA withdraws jurisdiction.

12.     Defendants, agencies of the United States and their officers acting within their official capacities, are subject to personal jurisdiction within the District of Columbia for purposes of the Constitution's Due Process Clause and the District of Columbia's long-arm statute.

13.     Venue lies in this judicial district under 28 U.S.C. § 1391 because defendants are agencies and officers of agencies of the United States who reside in this judicial district.

## III.     PARTIES

A.     <u>Plaintiff</u>

14.     Plaintiff, a citizen and resident of the Republic of China, transferred approximately $500,000 into the SWAL, LP Escrow Account on or about March 4, 2014.  On April 21, 2014, plaintiff filed a Form I-526, Immigrant Petition by Alien Entrepreneur.  (No. WAC 14-902-36353).  USCIS issued a Notice of Intent to Deny (NOID) on February 4, 2016. Plaintiff responded with additional evidence on March 8, 2016.  On September 23, 2016, plaintiff filed a supplement to her submission.  On April 3, 2017, USCIS, through the Immigrant Investor Program Office, denied plaintiff's Form I-526 Petition.  On May 4, 2017, plaintiff filed an administrative appeal with the AAO.  On January 26, 2018, the AAO denied plaintiff's Form I-526 petition.

B.   Defendants

15.    The U.S. Department of Homeland Security ("DHS") is the federal agency bearing responsibility for administration and enforcement of the nation's immigration laws.

16.    Defendant Kirstjen Nielsen, is sued in her official capacity as DHS Secretary in which she is charged with the just administration and enforcement of the immigration laws.  8 U.S.C. § 1103(a).

17.    The U.S. Citizenship and Immigration Services ("USCIS"), a component of the U.S. Department of Homeland Security, is responsible for awarding visa petitions in appropriate circumstances consistent with the INA.  As used below, "USCIS" refers to both the U.S. Citizenship and Immigration Services, and predecessor agency U.S. Immigration and Naturalization Services.

18.    Defendant L. Francis Cissna sued in his official capacity as Director of USCIS.

19.    Defendant Ron Rosenberg is sued in his official capacity as USCIS Chief of the Administrative Appeals Office.

**IV.    FACTS**

A.   The EB-5 Program's Legal Framework

i.    *The Statutory Framework*

20.    Plaintiff seeks eligibility for an immigrant visa under the fifth employment-based preference category ("EB-5") of the Immigration Act of 1990.  *See* Pub. L. No. 101-649, § 121(a) (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)) (hereinafter the "Act").  The purpose of the law is to expand economic opportunity by permitting alien entrepreneurs to invest in U.S. commercial enterprises and create job opportunities for American workers.

21.    There are three statutory requirements:  (1) a foreign national must invest a qualifying capital contribution of either $1,000,000 (or $500,000 if in an underserved area) in

a new commercial enterprise; (2) that will employ a minimum of ten U.S. workers; and (3) for

an investment made after November 29, 1990:

> (A)   Visas shall be made available . . . to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise (including a limited partnership)—

> (i)   in which such alien has invested (after the date of the enactment of the Immigration Act of 1990 [enacted Nov. 29, 1990]) or, is actively in the process of investing, capital in an amount not less than the amount specified in subparagraph (C),[1] and

> (ii)   which will benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters).  8 U.S.C. § 1153(b)(5).

22.     In 1992, Congress expanded the program by introducing a regional center

concept.  *See* Dep't of Commerce, Justice, and State, the Judiciary, and Related Agencies

Appropriations Act, P.L. 102-395 § 610 (Oct. 6, 1992).  This program encourages investors to

invest in commercial enterprises located within certain, designated "regional centers" and

permits these regional centers to pool investments from multiple investors.  *See* 8 U.S.C §

1153 *note*.  The program further allows the alien entrepreneur to satisfy the job creation

requirement by counting not only the jobs directly created by the investment, but also those

that are indirectly created by its effect (as determined by "reasonable methodologies"), such as

the investment's revenues from "improved regional productivity, job creation, or increased

domestic capital investment resulting from the program." *Id.*

23.     A foreign investor bears the burden of proof in establishing eligibility under the

---

[1] While Congress established a minimum capital investment of $1,000,000, foreign investors are authorized to make a $500,000 investment in a targeted employment area, defined as a "rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate."  8 U.S.C. § 1153(b)(5)(C); 8 C.F.R. § 204.6(f).

Act, and applies for an EB-5 visa by submitting a Form I-526, Immigrant Petition by Alien

Entrepreneur to the U.S. Citizenship and Immigration Services.  8 C.F.R. §§ 204.6(a), (c).

24.     If USCIS approves the Form I-526 by issuing a Form I-797 Notice of Action,

conditional resident status is provisionally granted (subject to satisfying further consular entry

requirements of the U.S. Department of State).

25.     If the alien entrepreneur is admitted into the United States as a conditional

permanent resident, the alien entrepreneur may petition two years later (by filing a Form I-

829) to remove the conditionality of their permanent resident status by demonstrating full

compliance with the visa requirements – i.e. the investment and job creation requirement.  8

U.S.C. § 1186b; 8 C.F.R. § 216.6.

26.     The Form I-526 petition is submitted to the Immigrant Investor Program

Office, which resides Washington, D.C.

ii.     *The Regulatory & Policy Framework*

27.     The following regulatory and policy framework applies in the evaluation of a

Form I-526 petition: the Act's implementing regulations at 8 C.F.R. § 204.6 originally

published in 1991, four decisions from the Board of Immigration Review from 1998

designated as precedents, a 2013 policy memorandum, and effective November 30, 2016, a

new USCIS Policy Manual.  *See* Volume 6:  Immigrants, Part G, Investors (hereinafter "6

USCIS-PM-G").

28.     In 1991, USCIS' predecessor agency, the former Immigration and

Nationalization Service ("INS") published regulations to guide the procedures for alien

entrepreneurs seeking eligibility under the EB-5 statute and its implementing regulations.  *See*

56 Fed. Reg. 60,897; 60,910-13 (INS) (Nov. 29, 1991) (codified at 8 C.F.R. § 204.6).

Consistent with the EB-5 statute, an alien must demonstrate that they have invested, or are

actively investing, lawfully obtained capital in a new commercial enterprise[2] in the United

States that will create at least ten full-time jobs for American workers.  *See* 8 C.F.R. §§

204.6(j)(1)-(6).

    29.    DHS defines *Invest* in 8 C.F.R. § 204.6(e) as:

> Invest means to contribute capital. A contribution of capital in exchange for a note,
> bond, convertible debt, obligation, or any other debt arrangement between the alien
> entrepreneur and the new commercial enterprise does not constitute a contribution of
> capital for the purposes of this part.

    30.    8 C.F.R. § 204.6(e), which defines *Capital* as:

> Capital means cash, equipment, inventory, other tangible property, cash equivalents,
> and indebtedness secured by assets owned by the alien entrepreneur, provided that the
> alien entrepreneur is personally and primarily liable and that the assets of the new
> commercial enterprise upon which the petition is based are not used to secure any of
> the indebtedness. All capital shall be valued at fair market value in United States
> dollars.  Assets acquired, directly or indirectly, by unlawful means (such as criminal
> activities) shall not be considered capital for the purposes of section 203(b)(5) of the
> Act.

    31.    DHS interprets the Act's capital contribution requirement in 8 C.F.R. §

204.6(j)(2) to require that that an investment be placed at risk for the purpose of generating a

return:

> To show that the petitioner has invested or is actively in the process of investing the
> required amount of capital, the petition must be accompanied by evidence that the
> petitioner has placed the required amount of capital at risk for the purpose of
> generating a return on the capital placed at risk.  Evidence of mere intent to invest, or
> of prospective investment arrangements entailing no present commitment, will not
> suffice to show that the petitioner is actively in the process of investing. The alien
> must show actual commitment of the required amount of capital. Such evidence may
> include, but need not be limited to:

>     (i)    Bank statement(s) showing amount(s) deposited in United States
> business account(s) for the enterprise; . . .

>     (iv)    Evidence of monies transferred or committed to be transferred to the

---

[2] The I-526 petition may be supported by an investment into a wholly new enterprise, the
expansion of an existing business, or a troubled business.  *See* 8 C.F.R. § 204.6(h).

new commercial enterprise in exchange for shares of stock (voting or nonvoting, common or preferred).  Such stock may not include terms requiring the new commercial enterprise to redeem it at the holder's request; or . . .

32.     Capital acquired, directly or indirectly through unlawful means is not permissible.  8 C.F.R. § 204.6(e).  To demonstrate that the "petitioner has invested, or is actively in the process of investing, capital obtained through lawful means" the petitioner must submit, as applicable, the following documentation:

(i)      Foreign business registration records;

(ii)     Corporate, partnership (or any other entity in any form which has filed in any country or subdivision thereof any return described in this subpart), and personal tax returns including income, franchise, property (whether real, personal, or intangible), or any other tax returns of any kind filed within five years, with any taxing jurisdiction in or outside the United States by or on behalf of the petitioner;

(iii)    Evidence identifying any other source(s) of capital; or

(iv)     Certified copies of any judgments or evidence of all pending governmental civil or criminal actions, governmental administrative proceedings, and any private civil actions (pending or otherwise) involving monetary judgments against the petitioner from any court in or outside the United States within the past fifteen years.

33.     Since the passage of the Act more than twenty-five years ago, INS and later USCIS have issued precedential opinions, public statements and other internal guidance and training materials regarding its interpretation of the Act and 8 C.F.R. § 204.6.[3]

---

[3] *See, e.g.,* INS Office of the General Counsel Memo, "Alien Entrepreneurs under Section 203(b)(5) of the Immigration and Nationality Act" (Sep. 10, 1993); INS Memo, "EB-5 Investor," (Oct. 20, 1997) (released under the Freedom of Information Act to the American Immigration Lawyers Association ("AILA") (hereinafter the "1997 Policy Memo"); 2011 USCIS EB-5 Training Materials (through May 2011 (released under the Freedom of Information Act to AILA) (hereinafter the "2011 Training Materials"); USCIS 2013 EB-5 Training PowerPoint Presentation (2013) (released under the Freedom of Information Act to AILA) (hereinafter the "2013 Training Materials"); and USCIS Policy Manual, Volume 6, Part G (Nov. 30, 2016) (hereinafter the "2016 Policy Manual").

34.     In 1998, to provide additional guidance on its own implementing regulations at 8 C.F.R. § 204.6, INS designated four decisions as "precedential decisions," which are binding on all Service employees in the administration of the Act.  *See*, *Matter of Izummi*, 22 I. & N. Dec. 169 (Assoc. Comm. 1998); *Matter of Soffici*, 22 I. & N. Dec. 158 (Assoc. Comm. 1998); *Matter of Ho*, 22 I. & N. Dec. 206 (Assoc. Comm. 1998); *Matter of Hsiung*, 22 I. & N. Dec. 201 (Assoc. Comm. 1998).

35.     On May 13, 2013, USCIS released consolidated policy guidance, an expansive, twenty-seven page memorandum.  *See* USCIS Policy Memorandum, No. P.M.-602-0082, EB-5 Adjudications Policy (May 30, 2013) (hereinafter "EB-5 Policy Memo").  This EB-5 Policy Memo affirms prior policy guidance "to the extent that it does not conflict," [at page 1], but also cautions that "is intended solely for the training and guidance of USCIS personnel in performing their duties relative to the adjudication of applications and petitions [which] . . . may not be relied upon . . . in litigation with the United States, or in any other form or manner."

36.     On November 30, 2016, the Agency once again consolidated its guidance concerning the EB-5 Investor Program in a USCIS Policy Manual, which at Part 6 of Volume 6, contains fifty-six pages of additional guidance.  *See* 6 USCIS-PM G, *available at https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartG.html.*

B.     Agency Final Adjudications

37.     Plaintiff and her sister, as limited partners of SWAL, LP, each invested the $500,000 qualifying capital cash investment into a new commercial enterprise in an underserved area and filed a Form I-526 with a supporting memorandum of law and exhibits to demonstrate, through a preponderance of the evidence, eligibility under INA § 203(b)(5).  8 U.S.C. § 1153(b)(5).

38.     The consolidated administrative record for these petitioners establishes that Powder Springs Assisted Living LLC, as the new commercial enterprise, projects the creation of more than 141 full-time jobs in the development, construction, and operation of the senior living community.  Total project costs are expected to be $17.8 million, a portion of which comprises the direct, qualifying capital contributions of these petitioner-investors.

        i.      *Plaintiff's Sister's Approved EB-5 Petition*

39.     Plaintiff's sister, Jingkun Zhao, filed a Form I-526 Petition on April 21, 2014. She provided evidence of her all-cash, $500,000 wire transfer into SWAL, LP's escrow account on March 4, 2014.  Plaintiff's sister, in the accompanying legal memorandum, described the source of funds from the evidence filed in support of the Form I-526 Petition: "Petitioner's investment is funded by a gift from her mother. The Petitioner's mother, Lijuan KANG, allowed the Petitioner and her sister (another Petitioner in this project) [the plaintiff herein] to obtain a mortgage loan against the value of a property she has owned for a number of years."

40.     On February 2, 2016, defendant USCIS issued a Request for Evidence to plaintiff's sister seeking more information because the agency was unclear as to who owned the investment funds and whether it derived from lawful means.

41.     On April 26, 2016, plaintiff's sister filed a response.  In a sworn affidavit, with attached evidence, she explained that her parents gifted a residential property in Haidian District to her and plaintiff on January 27, 2014 through a Gift Agreement, and that her younger sister [plaintiff], through an Entrustment Agreement, secured a Mortgage in the amount of RMB 6,720,000 in February 2014 on the property to obtain the required capital investment for their EB-5 investments.  Plaintiff's mother served as a guarantor.

42.     On April 14, 2017, defendant USCIS issued a Second Request for Evidence.

USCIS wrote that it remained unclear whether plaintiff's transfer of $500,000 to her sister

(from the Mortgage on their jointly-owned property in the Haidian District) "was a gift or

other transaction" from plaintiff to her sister.

43.     On July 11, 2017, plaintiff's sister filed a response providing evidence that

plaintiff gifted the $500,000 to her on February 25, 2014.

44.     On July 20, 2017, USCIS approved plaintiff's sister's Form I-526 Petition.

ii.     *Plaintiff's First Agency Denial*

45.     Plaintiff, Jingru Zhao, filed a Form I-526 Petition on April 21, 2014, the same

day as her sister whose Form I-526 Petition was subsequently approved by USCIS.  Plaintiff

provided evidence of her all-cash, $500,000 wire transfer into SWAL, LP's escrow account on

March 4, 2014, the same day as her sister.  Plaintiff, in the accompanying legal memorandum,

described the source of funds from the evidence filed in support of the Form I-526 Petition:

"Petitioner's investment is funded by a gift from her mother. The Petitioner's mother, Lijuan

KANG, allowed the Petitioner and her sister (another Petitioner in this project) [the plaintiff

herein] to obtain a mortgage loan against the value of a property she has owned for a number

of years."

46.     On February 4, 2016, two days after her sister received her First Request for

Evidence, USCIS issued plaintiff a Notice of Intent to Deny (NOID).  USCIS requested

evidence to establish how plaintiff's mother lawfully purchased the Haidian District property

in 2005 and questioned whether, pursuant to their interpretation of the implementing

regulations, it was the plaintiff or her mother who bears the risk of loss because the mortgage

loan appeared not be secured by plaintiff's assets.

47.     On or about March 3, 2016, plaintiff filed a response to the NOID.  Plaintiff

provided evidence on how her mother and father acquired the funds to purchase the Haidian

District property, and once again, explained, with supporting documentation, that:

> She submitted evidence that she obtained a personal loan of RMB6.7 million, split the proceeds with her sister, and converted her share to greater than $500,000 and used those funds for her EB-5 investment. The two sisters jointly owned the property so they jointly borrowed the money and divided the loan proceeds equally. The Petitioner is the borrower in that transaction and it is secured by a property at No. 10A2, Tower C, Building 2, Yard 2, No. 2, Landianchang East Road, Haidian District, Beijing.

48.     On April 3, 2017, defendant USCIS denied plaintiff's Form I-526 Petition. While defendant did determine that plaintiff had met the burden to demonstrate the lawful source of the funds, per the agency's interpretation of the EB-5 Adjudications Policy Manual, defendant found that plaintiff was not investing her own capital because she did not own the property securing the personal loan used for the EB-5 capital investment because the legal purchase and registration documents at the time of filing showed her mother as the owner of the property.

iii.     *Plaintiff's Denied Administrative Appeal*

49.     On May 5, 2017, plaintiff filed an administrative appeal with AAO.

50.     On January 26, 2018, defendant AAO issued a decision denying plaintiff's petition on two grounds. First, AAO found that petitioner's $500,000 all-cash capital contribution did not meet the definition of "capital" set forth in 8 C.F.R. § 204.6(3). AAO Decision at 2-4. Second, AAO raised, for the first time in the administrative record, a second basis by asserting that plaintiff's transfer of funds to the new commercial enterprise did not constitute placing the capital at risk as required under 8 C.F.R. § 204.6(j)(2). AAO Decision at 5.

C.     <u>Substantial Evidence in the Administrative Record</u>

i.     *Plaintiff's All-Cash Capital Contribution to the New Commercial Enterprise*

51.     8 C.F.R. § 204.6(j)(2), states that "[t]he alien must show actual commitment of

the required amount of capital" such as the following evidence:

(i) **[For Cash]** Bank statement(s) showing amount(s) deposited in United States business account(s) for the enterprise;

(ii) **[For Equipment]** Evidence of assets which have been purchased for use in the United States enterprise, including invoices, sales receipts, and purchase contracts containing sufficient information to identify such assets, their purchase costs, date of purchase, and purchasing entity;

(iii) [**For Other Tangible Property**] Evidence of property transferred from abroad for use in the United States enterprise, including United States Customs Service commercial entry documents, bills of lading, and transit insurance policies containing ownership information and sufficient information to identify the property and to indicate the fair market value of such property;

(iv) **[For Cash Equivalents]** Evidence of monies transferred or committed to be transferred to the new commercial enterprise in exchange for shares of stock (voting or nonvoting, common or preferred). Such stock may not include terms requiring the new commercial enterprise to redeem it at the holder's request; or

(v) **[For Indebtedness Secured by Assets Owned by the Alien Entrepreneur]** Evidence of any loan or mortgage agreement, promissory note, security agreement, or other evidence of borrowing which is secured by assets of the petitioner, other than those of the new commercial enterprise, and for which the petitioner is personally and primarily liable.

52.     Under 8 C.F.R. § 103.2, form instructions "are incorporated into the regulations requiring its submission."  Defendants' Form I-526 Instructions, *available at https://www.uscis.gov/sites/default/files/files/form/i-526instr.pdf*, asserts that "[y]ou may file this petition for yourself if you have established a new commercial enterprise: . . 2. In which you have invested or are actively in the process of investing the amount required for the area in which the enterprise is located."

53.     Defendants' Form I-526 Instructions, *available at https://www.uscis.gov/sites/default/files/files/form/i-526instr.pdf*, also provides that for "Initial Evidence Requirements" the following evidence must be filed with your petition:

Evidence that you have invested or are actively in the process of investing the amount required for the area in which the business is located. Such evidence may include, but

need not be limited to, **copies of bank statements**, evidence of assets that have been purchased for use in the enterprise, evidence of property transferred from abroad for use in the enterprise, **evidence of monies transferred** or committed to be transferred to the new commercial enterprise in exchange for shares of stock, any loan or mortgage, promissory note, security agreement, or other evidence of borrowing that is secured by assets of the petitioner.

54.     Plaintiff provided evidence of an all-cash wire transfer of more than $500,000 into SWAL, LP's escrow account on March 4, 2014, and documented this cash contribution with a bank statement in her Initial Evidence Requirements showing the amount deposited in a United States business account for the enterprise.

55.     The all-cash wire transfer, as deemed lawful by defendants, derived from plaintiff's mother who "allowed Petitioner to obtain a loan against the value of the property and gifted those funds to the two of them [plaintiff and her sister]."  Form I-526, Legal Memo at Part VII.

56.     Plaintiff did not seek eligibility under INA § 203(b)(5)'s capital contribution requirement by providing a $500,*000 promissory note to the new commercial enterprise*, Powder Springs Assisted Living LLC, where such **"**indebtedness [must be] secured by assets owned by the alien entrepreneur."  *See* 8 C.F.R. § 204.6(e), *Capital; see id.* (promissory notes qualify as a capital contribution between the petitioner and the new commercial enterprise when "the alien entrepreneur is personally and primarily liable and that the assets of the new commercial enterprise upon which the petition is based are not used to secure any of the indebtedness").

57.     There is no reasonable interpretation of INA § 203(b)(5) or 8 C.F.R. § 204.6 whereby Plaintiff's $500,000 U.S. cash deposit on March 4, 2014 into SWAL, LP Escrow Account could constitute anything *other than cash*, such as the other enumerated areas in the regulatory definition of *Capital,* like:

- equipment,
- inventory,
- other tangible property,
- cash equivalents, and [or]
- indebtedness secured by assets owned by the alien entrepreneur, provided that the alien entrepreneur is personally and primarily liable and that the assets of the new commercial enterprise upon which the petition is based are not used to secure any of the indebtedness.

58.     Defendants improperly interpreted INA § 203(b)(5) and 8 C.F.R. § 204.6(e) as requiring lawful and qualifying cash contributions to curiously and somehow be "secured by assets owned by the petitioner."

59.     Because "[i]nvest means to contribute capital" and "[c]apital means cash," the only reasonable interpretation of Plaintiff's $500,000 U.S. currency deposit to the new commercial enterprise is that she made a present commitment of qualifying capital under INA § 203(b)(5) and 8 C.F.R. § 204.6 which was fully at-risk.

ii.     *Permissibility of a General Partner's Buy Option under 8 C.F.R. § 204.6*

60.     The AAO determined that plaintiff's capital contribution was not at risk pursuant to 8 C.F.R. § 204.6(j)(2) based on redemption provisions in the Confidential Offering Memorandum and the Limited Partnership Agreement.

61.     On February 7, 2018, a court in this district considered whether defendants "acted in an arbitrary and capricious manner when it declared plaintiffs ineligible for visas because their investments came with a "call option," which gave the company in which they invested the choice to buy plaintiffs out."  *Chang*, 2018 U.S. Dist. LEXIS 19912, *2.  The court determined, *inter alia*, that the call option at issue did not provide the investors with any right to repayment, and held that USCIS' decision was arbitrary and capricious.  *Id.*

62.     In March 2017, another court in this district considered the same question on functionally identical facts, and again, held that the "[c]all option does not provide the

17

Plaintiffs in this case with any rights . . . no guarantees were made . . . that their capital would be returned regardless of the success or failure of the business." *Doe*, 239 F. Supp. 3d at 307. The court explained further that the call option at issue gave the "general partner the right to repurchase the Plaintiffs' interests if the business was successful, but *that right did not limit the substantial risk that Plaintiffs' investment could be wholly lost if the business was unsuccessful*." *Id.* (Emphasis added).

63.     As courts in this district have held in interpreting 8 C.F.R § 204.6(e) and *Matter of Izummi*, "[a] call option alone does not a debt arrangement make. . . [t]he call option in *Doe*, like the one here [*Chang*], was owned by the partnership, and came with no guarantee that the partnership would exercise it." *Chang*, 2018 U.S. Dist. LEXIS 19912, *22-23.

64.     The SWAL, LP call option, as substantially supported by the evidence in the administrative record and functionally identical to the call options in *Doe* and *Chang*, was owned by the partnership, came with no guarantee that the partnership would exercise it, and did not limit the substantial risk that plaintiff's investment could be wholly lost if the business was unsuccessful.

65.     The administrative record in this civil action similarly evidences that the General Partner *exclusively* held the call option to buy the shares of the limited partner investors and that the limited partners possessed no sell option or guaranteed return:

a.     "No Limited Partner will be permitted to withdraw from the [Limited Partnership] or to withdraw any portion of his or her capital account except as expressly proved for in the Limited Partnership Agreement, Other than in the event the Limited Partner failes the Visa Process, a Unit issued to a Limited Partner is non-transferable and the LP is prohibited from redeeming or repurchasing any units."  Confidential Offering Memorandum at pg. 12

b.      "The Partnership (but NOT the investors) shall have the option to redeem by transfer all of the outstanding Class A Units to the General Partner after the fifth anniversary of each Limited Partner making his/her investment or as soon as prudently possible thereafter taking into account the business needs of the Partnership."  Limited Partnership Agreement at Article 15.1(a).

66.      These documents in the administrative record expressed an aspiration, but not a guarantee, of a return of capital and a return on investment, and described the possible means of effectuation through the General Partner's exclusive call option:

a.      "The Partnership will use its best efforts to redeem Class A Units."  Limited Partnership Agreement at Article 15.1(a).

b.      "The business plan contemplates selling or refinancing the Project upon achieving stabilization which is projected to take less than 5 years."  Confidential Offering Memorandum at pg. 9 (Emphasis added).

c.      Cash flow, cash availability, and debt availability "*may* suffice to repay all the Limited Partners," but otherwise, the General Partner "*can* propose a sale of the Project or decide upon other steps," which "*could*" include restructuring the assets of the enterprise. Confidential Offering Memorandum at pg. 9 (Emphasis added).

67.      The administrative record does not support a finding that the investor has a guarantee of repayment of her $500,000 capital investment plus interest at a predetermined price and at a predetermined time as a debt arrangement.  *See* AAO Decision at pg. 5.

iii.      *The Risk of Loss is Self-Evident*

68.      Plaintiff and her sister were informed that their $500,000 capital investment was at full risk of loss:

The LP will be subject to risks generally incident to the ownership and development of

real estate, specifically in the assisted living and care business, including: (a) changes in general economic or local conditions;  (b) changes in supply of or demand for similar or competing properties in an area; (c) bankruptcies, financial difficulties or defaults by vendors, contractors and others; ( d) changes in tax, real estate, environmental and zoning laws; (e) periods of high interest rates and tight money supply; and (f) general overbuilding or excess supply in the market area.  For these and other reasons, no assurances can be given that the LP will be profitable or that it will produce the targeted financial returns.

The financing of the Project will involve a high degree of debt and corresponding levels of debt service.  These lenders will have priority over the equity investors in their claims on the cash flows from the Project.  If interest rates increase from today's historically low levels, the cost to service or refinance such indebtedness will increase.  If expected cash flows are not sufficient to satisfy debt service requirements or if the debt cannot be paid or refinanced when it comes due, there will be no cash available for distribution to investors in the Project and **the lender could foreclose on the Project.  Default under the debt instruments or a foreclosure by lenders could result in a complete loss of investment.**

Possible Loss of Entire Investment.

The Limited Partners of the LP should be aware that if the LP is not successful in its business, their entire investment in the LP may become worthless.  There is a risk of delay in realizing any return of or on the investment for which risks Investors will be required to represent that they have received advice and counsel from financial, tax, business, securities and/or other advisors, and not from the General Partner the Developer, or Lender to the Developer.

Confidential Offering Memorandum at pgs. 13-14 (Emphasis added).

69.     Similar to *Doe* and *Chang*, the administrative record here contains no evidence

of a guarantee made to plaintiff that her capital would be returned to her regardless of the

success or failure of the business.  *Doe*, 239 F. Supp. 2d at 307 ("[t]he Call Option gave [the]

general partner the right to repurchase the Plaintiff's interests if the business was successful,

but *that right did not limit the substantial risk that Plaintiffs' investment could be wholly lost

if the business was unsuccessful*"); *Chang*, 2018 U.S. Dist. Lexis 19912, *18 ("it is the

company that benefits from both sides of the agreement:  it has both the money and the right

to return the money if it would prefer to have the investor's partnership interest back").

70.     Defendants' conclusion in the denial that provisions in the Confidential Offering Memorandum and the Limited Partnership Agreement constitute an impermissible debt arrangement where the capital is protected from a risk of loss [AAO Decision at pg. 5] is plainly arbitrary and capricious, not supported by the evidence, beyond the scope of statutory authority, and inconsistent with judicial interpretations of 8 C.F.R. § 204.6 in this district.

71.     Defendants, as discussed *supra*, approved plaintiff's sister's Form I-526 petition which contained the same Confidential Offering Memorandum and Limited Partnership Agreement.

## V.     EXHAUSTION & INJURY

72.     The INA directs that "[i]n general Visas shall be made available" to qualifying EB-5 petitioners," thus, the decision to issue a visa under the Immigrant Investor Program is not discretionary.  8 U.S.C. § 1153(b)(5)(A) (emphasis added).

73.     The APA provides that "an [a]n agency action made reviewable by statute and [a] final agency action for which there is no other adequate remedy in court are subject to judicial review."  5 U.S.C. § 704. "Agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

74.     Defendants' wrongful denial of plaintiff's Form I-526 Petition has caused, and will continue to cause, personal harm to plaintiff.

75.     Defendants' wrongful denial of plaintiff's Form I-526 Petition has caused, and will continue to cause, an actual disruption of the economic relationship between the plaintiff and the senior living project.

## VI.    CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### *DEPRIVATION AND VIOLATION OF RIGHTS UNDER THE APA*

76.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above, inclusive.

77.    Defendants' denials of plaintiff's Form I-526 Petition are improper and reviewable under 5 U.S.C. § 702.

78.    As a result of these improper decisions by defendants, plaintiff is "suffering a legal wrong of agency action," is "adversely affected or aggrieved by agency action," and therefore is "entitled to judicial review thereof" under 5 U.S.C. § 702.

79.    Defendants' decision to deny plaintiff's visa petition is based upon legal interpretations and factual findings contrary to, and inconsistent with, INA § 203(b)(5), 8 C.F.R. § 204.6, the four EB-5 precedent decisions, and the applicable policy memoranda.

80.    The APA directs that the "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" [5 U.S.C. § 706(2)(A)]; "in excess of statutory . . . authorities" [§ 706(2)(C)]; and "unsupported by substantial evidence" [§ 706(2)(E)].

81.    Defendants' actions, findings, and conclusions are arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and in excess of statutory authority under 5 U.S.C § 706 as follows:

a.    In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants erroneously conclude that plaintiff had failed to establish eligibility for the benefit sought under INA § 203(b)(5), 8 C.F.R. § 204.6, and the four EB-5 precedent decisions;

b.      In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants erroneously determined that plaintiff failed to demonstrate through a preponderance of the evidence a qualifying investment as defined in 8 C.F.R. § 204.6(e);

c.      In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants erroneously determined that applicable legal requirements require plaintiff to somehow "secure" an all-cash capital contribution into a new commercial enterprise;

d.      In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants failed to conclude properly that Plaintiff's $500,000 all-cash capital contribution was, in fact, cash and not a promissory note or other form of indebtedness between plaintiff and the new commercial enterprise;

e.      In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants applied a legal standard under 8 C.F.R. § 204.6(e) and interpretations of the precedential decisions, *Matter of Soffici* and *Matter of Izummi* that failed to be subject to public notice and comment, which is in excess of statutory and regulatory authority, *ultra vires,* and void [*See e.g, Doe* and *Chang*];

f.      In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants erroneously determined that the General Partner's option to redeem plaintiff's equity units, renders the investment an impermissible debt arrangement under 8 C.F.R. § 204.6(e) and *Matter of Izummi* [*See Doe* and *Chang*];

g.      In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants erroneously determined that the new commercial enterprise "has guaranteed the Petitioner the return of her investment" where the investors have the "right to force the NCE to redeem their ownership interest." AAO Decision at pg. 5.

h.      In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants acted arbitrarily and capriciously when it denied plaintiff's EB-5 petition, after approving plaintiff's sister's EB-5

petition with the identical administrative record [*Doe*, 239 F. Supp. 3d at 307-08]; and

      i.      In sum, defendants' actions, findings, and conclusions that plaintiff

insufficiently demonstrated eligibility under INA § 203(b)(5) and 8 C.F.R. §§ 204.6(e) and

(j)(2) with a qualifying contribution of capital is "arbitrary, capricious, and abuse of discretion,

[and not] otherwise in accordance with law; . . . in excess of statutory jurisdiction, authority, or

limitations, or short of statutory right; without observance of procedure required by law; [and]

unsupported by substantial evidence" contrary to INA § 203(b)(5) and 8 C.F.R. § 204.6.

## SECOND CAUSE OF ACTION

### *DEPRIVATION AND VIOLATION OF RIGHTS UNDER THE INA*

82.      Plaintiff repeats and realleges the allegations contained in the preceding
paragraphs above, inclusive.

83.      In denying plaintiff's Form I-526 Petition, defendants have unlawfully
interpreted and applied INA § 203(b)(5), 8 C.F.R. § 204.6, its four EB-5 precedent decisions,
and policy memoranda.

84.      As a result, defendants deprived plaintiff of her rights under the INA to benefit
from the statute's immigrant investor provisions, and thereby violated those rights.

## THIRD CAUSE OF ACTION

### *DECLARATORY JUDGMENT ACT*

85.      Plaintiff repeats and realleges the allegations contained in the proceedings
paragraphs above, inclusive.

86.      Plaintiff is entitled to a declaration of rights, namely, eligibility to classification
under INA § 203(b)(5) and 8 C.F.R. § 204.6 as a conditional permanent resident, which shall
have the force and effect of a final judgment, in accordance with 28 U.S.C. § 2201(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby prays for relief as follows:

a.     That the Court hold unlawful and set aside defendants' findings that plaintiff failed to establish eligibility under INA § 203(b)(5);

b.     That the Court declare that defendants' final action denying plaintiff's Form I-526 Petition is arbitrary and capricious, not supported by substantial evidence, and beyond the scope of defendants' statutory authority;

c.     That the Court either grant independently or remand and direct defendants to grant plaintiff's eligibility to alien entrepreneur classification under INA § 203(b)(5);

d.     That the Court provide further relief as it deems appropriate, just, and equitable; and

e.     That the Court grant reasonable attorney's fees, expenses and costs of court to plaintiff, pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, or any other applicable provision, to include 28 U.S.C. 2412(d).

DATED:   June 22, 2018
              New York, New York

                              Respectfully submitted,


                              //s//  *Jason D. Wright*
                              Jason D. Wright, Esq.
                              DC Bar #1029983

                              WRIGHT LAW FIRM, PLLC
                              40 Fulton Street, 23rd Floor
                              New York, New York 10038
                              Direct:  212-683-4892
                              Mobile:  202-578-0260
                              Fax:  917-677-8577
                              E-mail: jwright@jasonwrightesq.com

                              *Counsel for Plaintiff*